IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:15-MJ-22 |
| ) | |
| MINAS POLITIS ) | |
| ) | |
| and ) | |
| ) | |
| ANTHONY VASILIADES, ) | |
| ) | |
| Defendants. ) | |

FILED JAN 15 2015 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Beau O. C. Bilek, Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGORUND

1. This affidavit is submitted in support of a criminal complaint charging MINAS POLITIS and ANTHONY VASILIADES with knowingly, intentionally, and unlawfully combining, conspiring, confederating, and agreeing with each other to possess with intent to distribute 500 grams or more of a mixture and substance containing detectable amounts of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. This affidavit is for the limited purpose of obtaining a criminal complaint. It is not intended to include each and every fact and matter observed by me or known to the government.

3. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States

1

who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

4. I have been a Special Agent with the Drug Enforcement Administration for over nine years and a sworn law enforcement officer in the U.S. Department of Justice for over 14 years. During my time in law enforcement, I have participated in numerous investigations involving unlawful narcotics distribution. In these investigations, I have been involved in the application for and execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, illegal drug proceeds, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and users of controlled dangerous substances.

5. The information contained herein is based on personal knowledge, information provided to your affiant by sworn law enforcement officers, and information obtained from public records, cooperative witnesses, and other sources as indicated herein.

6. Title 21, United States Code, Section 841(a)(1) prohibits any person from knowingly or intentionally manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance.

7. Title 21, United States Code, Section 846 prohibits any person from attempting or conspiring to commit any offense in the same subchapter, including those described in Section 841(a)(1).

8. Title 21, United States Code, Section 812(b) specifies that cocaine is a Schedule

2

II controlled substance. According to the DEA's scheduling parameters, Schedule II controlled substances are currently acceptable forms of treatment for medical issues in the United States, but they are subject to comprehensive restrictions and regulations because of the significant potential for abuse, which may lead to serious psychological and/or physical dependence.

9. Through my training and experience, I am familiar with narcotics investigations targeting the producers/traffickers/distributors of cocaine. I am aware of the aspects of this class of drug that make it desirable to the addict as well as to the distributor. I am very aware of the many methods of shipping and distribution commonplace with traffickers of this drug as well as the payment methods for this controlled substance.

10. Unless otherwise noted, wherever in this affidavit I assert that a statement was made by an individual, that statement is described in substance and in part and is not intended to be a verbatim recitation of such statement. Moreover, this affidavit is not intended to include each and every fact and matter observed by me or known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts necessary to establish that probable cause exists that violations of Title 21, United States Code, Sections 841(a)(1) and 846 occurred within the documented activities of POLITIS and VASILIADES.

## BACKGROUND OF INVESTIGATION

11. I believe there is probable cause that POLITIS and VASILIADES unlawfully conspired to possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, in the Eastern District of Virginia.

12. The DEA and the Arlington Police Department (APD) are investigating the criminal activities of a drug trafficking conspiracy working in the Eastern District of Virginia and elsewhere. The members of this conspiracy are responsible for conspiring to possess with intent to distribute 500 grams or more of a substance containing detectable amounts of cocaine, a

3

Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. During this investigation, the DEA and APD have utilized confidential informants, surveillance and various other investigative techniques. As a result of the investigation, POLITIS and VASILIADES have been identified as conspiring to possess with the intent to distribute quantities of cocaine.

13. Beginning in approximately November 2014, detectives from APD were contacted by an individual who had previously worked with local law enforcement and the DEA as a Confidential Source (CS), obtaining information and evidence to be used in the prosecution of subjects who had violated state and federal drug laws. This CS had worked extensively in 2010 and 2011 with a detective from Fairfax County, uncovering the drug trafficking activities of individuals working in the Eastern District of Virginia. According to controlling agents and detectives, the CS, while working under the direction of law enforcement, purchased cocaine to be used as evidence on at least five occasions. Information provided by the CS was independently verified by controlling agents and detectives utilizing other investigative methods. The controlling agents and detectives found no evidence of unreliability during their dealings with the CS. The CS was a paid informant.

14. When the CS contacted detectives from APD in November 2014, the CS relayed information about an individual named MINAS POLITIS, who had requested that the CS find a source from whom POLITIS and an individual named "Tony" (later identified as ANTHONY VASILIADES) could purchase cocaine. The CS stated he met POLITIS in October 2014 at a social gathering and became friendly with POLITIS following this meeting. Shortly after this meeting, POLITIS began questioning the CS whether he/she knew sources of supply for cocaine. The CS stated that POLITIS, along with VASILIADES, were interested in purchasing kilogram quantities of cocaine, and believed the CS had connections to facilitate this transaction. The CS

4

informed APD detectives that POLITIS communicated with the CS from mobile telephone number 610-416-7330. An administrative subpoena sent to the carrier for the phone number revealed this number is subscribed to by a MINAS POLITIS, with an address of 4011 Silvage Rd., Baltimore, MD.

15. The CS stated that POLITIS and VASILIADES traveled to Washington, DC, to meet with the CS and discuss the planned purchase of cocaine. Records of text communication provided to detectives by the CS show that the number subscribed to by POLITIS texted the CS's phone with the message that he (POLITIS) was in DC for the meeting. The CS also showed detectives several December 2014 text messages from POLITIS requesting any "news." The CS explained to detectives that POLITIS was inquiring about the CS's efforts to find a cocaine supplier for POLITIS.

16. Under the direction of an APD detective, the CS eventually relayed to POLITIS that the CS had found a supplier of cocaine for POLITIS and VASILIADES who would sell two (2) kilograms of cocaine for $50,000. On January 9, 2015, the CS, while working under the direction of law enforcement, placed a recorded phone call to POLITIS. The conversation between the CS and POLITIS included the following exchange:

CS: *It's gonna' go down next Wednesday.*

POLITIS: *This Wednesday coming?*

CS: *Yeah, this Wednesday coming. . . . One-hundred percent, man. Just have everything ready, so when you come up it will all be good.*

POLITIS (in Greek): *Two for fifty?*

CS: *Yup, two for fifty, yup.*

POLITIS (in Greek): [asking about "H" or "herouash," both street slang for heroin]

CS: *Naw, I don't f#ck with that, man, straight up.*

5

POLITIS: *No? Okay.*

CS: *But the other one, yeah, for sure.*

POLITIS: *Okay, so, where we gonna' meet . . . Maryland?*

CS: *No, probably Virginia, man. That way it's closer to home, you know?*

POLITIS: *Virginia? Okay . . . We are ready right here waiting for you.*

17. On January 13, 2015, a second call was placed and recorded from the CS to POLITIS. In this call, the following exchange occurred:

POLITIS: *Any good news?*

CS: *Yeah, we're good to go tomorrow. What time is good for you? We got to do it early.*

POLITIS: *I can leave work at 1:00, and be there 2:30.*

CS: *Alright, perfect, 2:30.*

POLITIS: *2:30 where?*

CS: *Alexandria, I mean Arlington, Crystal City. . . . Call me tomorrow and I will give you the address, everything. Everything's good to go.*

POLITIS: *Guaranteed. Two for fifty.*

CS: *Yup, two for fifty.*

POLITIS: *My man, my man. . . . Alright, I'll talk to you tomorrow.*

18. On January 14, 2015, a third call was placed and recorded from the CS to POLITIS. In this call, the following exchange occurred:

CS (in Greek): *Besides the ashprous* [Greek term for "white" and common drug slang for powdered cocaine] *deal, my guy wants to know if you want anything else?*

POLITIS (in Greek): *What kind?*

CS: *"X."*

6

POLITIS: *Oh wow. [In Greek] Maybe on other times. Will your sources be able to provide more in the future?*

CS: *Yeah, he's good. As many times as you want. OK, look. I'm going to text you the address, but . . . you guys still coming up at . . . What time are you leaving Baltimore?*

POLITIS: *We will probably be there around 2:30, 3:00.*

CS: *OK, perfect, 2:30. Alright, I am going to text you the address. It's gonna' be in a shopping center over here probably.*

POLITIS: *OK, cuz, you got it. Thank you.*

19. At approximately 2:00 p.m. on January 14, 2015, the CS was driven to a public parking lot in the City of Alexandria, Virginia, within the Eastern District of Virginia. The CS was accompanied by an APD detective working in an undercover capacity, posing as the source of supply for the cocaine. The CS communicated to POLITIS an address associated with this parking lot, and POLITIS replied that he was 20 minutes from the meet-up location.

20. At approximately 2:24 p.m., POLITIS told the CS he was five minutes away. At approximately 2:27 p.m., an APD detective observed a dark-colored Chrysler 300 bearing Maryland tags 5BA9637 (registered to ANTHONY VASILIADES, 4708 Vicky Rd., Baltimore, MD 21236) parking in front of a restaurant located within the parking lot to which the CS had directed POLITIS. The detective observed two caucasian males emerge from the vehicle and enter the restaurant. During this time, the CS spoke to POLITIS by phone, and advised him to drive to the section of the lot in which the CS was parked. A few minutes later, the detective observed the two men reenter the Chrysler and drive to the portion of the lot in which the CS awaited.

21. At approximately 2:31 p.m., the Chrysler 300 parked in the section of the lot in which the CS was located. A DEA task force officer observed the CS walk towards the Chrysler

7

300 and enter through the rear driver side passenger door. A few moments later, the CS was observed exiting the vehicle with a clear plastic document organizer under his arm. The CS returned to the vehicle in which he arrived, which contained the APD detective. The detective examined the organizer and observed a large amount of U.S. currency in vacuum sealed plastic bags. The CS informed the detective that POLITIS and VASILIADES had confirmed the bags contained $50,000 in U.S. currency.

22. The detective provided the CS with two kilograms of cocaine, which had been obtained from an approved DEA source and was specifically provided for the purpose of this operation, per policy. The cocaine was contained in a small black canvas sack. A DEA task force officer observed the CS walk to the Chrysler 300 with the black sack containing the cocaine. The officer observed the CS pass the black sack through the driver's window to the driver. Immediately after the driver of the Chrysler 300 took possession of the black sack, the vehicle began to move towards the exit of the parking lot. Before the vehicle could leave, vehicles driven by law enforcement officers blocked all exits to this section of the lot. Two vehicles made soft contact with the front and rear bumpers of the Chrysler 300, per DEA vehicle containment procedure.

23. The two occupants of the Chrysler 300 were compliant and obeyed the commands of agents on the scene. The occupant seated in the driver's seat identified himself as ANTHONY VASILIADES. The occupant seated in the front passenger seat identified himself as MINAS POLITIS. Inside the Chrysler 300, law enforcement officers found the black canvas bag containing two kilograms of cocaine.

## CONCLUSION

24. On January 14, 2015, the CS, acting under the supervision of law enforcement, coordinated a meeting with POLITIS and VASILIADES for the purpose of selling them two

kilograms of cocaine. Law enforcement witnessed POLITIS and VASILIADES arrive at the appointed scene of the drug transaction, pay the CS $50,000 for the cocaine, and receive in return a black sack containing cocaine. Additional evidence obtained during this investigation, as detailed above, further illustrates the means and manner in which POLITIS and VASILIADES conspired to possess with intent to distribute 500 grams or more of cocaine in the Eastern District of Virginia.

25. Based upon the information provided in this affidavit, probable cause exists to believe that from on or around December 2014 through January 2015, within the Eastern District of Virginia, MINAS POLITIS and ANTHONY VASILIADES, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with each other to possess with intent to distribute 500 grams or more of a mixture and substance containing detectable amounts of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

26. Wherefore, I respectfully request that this Court issue a criminal complaint charging MINAS POLITIS and ANTHONY VASILIADES with violations of 21 U.S.C. §§ 841(a)(1) & 846.

Beau O. C. Bilek
Special Agent, DEA

Sworn and subscribed to before me this 15th day of January 2015, at Alexandria, Virginia.

/s/
Ivan D. Davis
United States Magistrate Judge